# STATE OF MICHIGAN

# COURT OF APPEALS

MARILYN LAFAVE,

        Plaintiff-Appellee,

UNPUBLISHED
June 25, 2015

v

JOSEPH A. LAFAVE,

        Defendant-Appellant.

No. 320787
Presque Isle Circuit Court
LC No. 13-083800-DO

Before: RONAYNE KRAUSE, P.J., and MURPHY and SERVITTO, JJ.

PER CURIAM.

Defendant appeals as of right the parties' judgment of divorce. Defendant challenges the trial court's inclusion of his premarital property in the marital estate subject to division, as well as the court's equal division of the marital estate. We affirm.

The parties married in 1990; it was a second marriage for both. At the time of their marriage, defendant worked for Presque Isle Electric and plaintiff worked at Rogers City Hospital. Defendant retired in 1997, and plaintiff worked for 15 years following defendant's retirement, mostly at the Presque Isle County Council on Aging. Defendant began to have serious health problems in 1998, and over the next decade he underwent four major surgeries, including the amputation of his right leg below the knee. During and after each of defendant's surgeries, plaintiff took time off from work to nurse him back to health. Defendant's health again took a turn for the worse in 2011, when he spent three weeks in the hospital for a gallbladder removal operation, followed by two weeks in rehabilitation. As to that entire period, plaintiff took time off from work to care for defendant. After this episode, defendant's doctor wanted to place him in a nursing home, but plaintiff demurred because she knew defendant's children would not allow it. Defendant's doctor then advised the family that if defendant remained in his home, he would require around-the-clock care with at least two people per shift. Defendant came home from rehabilitation in October 2011, and his children took shifts caring for him in pairs according to the doctor's instructions; plaintiff was still working at the time.

Plaintiff lost her job at the Presque Isle County Council on Aging in January 2012, at which point she resumed her role as defendant's primary caregiver, and the children started coming over individually rather than in pairs. Defendant's insurance paid for a Vital Care aide who came to the house for 45 to 60 minutes twice a week to give defendant a sponge bath, and for a nurse who came by every two weeks for half an hour to give him a checkup and once a

-1-

month to change his catheter. The rest of the time, plaintiff cared for him, assisted by one of his children.

Unfortunately, tensions escalated between plaintiff and defendant's children, with many disputes centered around expenditures the children wanted plaintiff to make for the care of their father. Things came to a head when plaintiff slapped defendant on the hand or arm to make him stop twisting her arm. Defendant's son, Roger LaFave, was present and protested to plaintiff about the slap, which he claimed left a mark on defendant's arm. Then in June 2013, unbeknownst to plaintiff, Roger LaFave successfully sought a guardianship and conservatorship over defendant and had himself named as guardian/conservator. From that point, plaintiff testified, defendant's children took over the house. She testified that she was made to feel unwelcome; she was forbidden to speak to defendant. Plaintiff filed for divorce in July 2013 and moved out of the marital home the following month. At the time of the divorce trial in January 2014, plaintiff was 74 years old, defendant was 82, and the couple had been married just under 24 years.

The primary issues at trial concerned the identification and division of the marital assets. After reviewing the relevant documents and hearing testimony from both sides, the trial court determined that the parties had comingled their separate assets with marital assets such that all the assets of the estate were marital and subject to division between the parties. The court stated that "[o]ver the course of this marriage of 23 years[,] the parties combined their assets and truly acted as financial partners in the affairs of their marriage." The court further indicated that "[t]he testimony established that these parties consulted with one another regarding expenditures and always treated their resources as joint assets." As additional support for treating all of the parties' assets as marital assets subject to division, the trial court pointed to a 2007 trust into which all assets were placed or conveyed for the benefit of both parties. The court further determined that, given the facts and circumstances of the case, an equitable division would be to split the estate equally between the parties.

This appeal entails an issue concerning the composition of the marital estate and an issue regarding the division of that marital estate. "We review for clear error a trial court's findings of fact regarding whether a particular asset qualifies as marital or separate property." *Woodington v Shokoohi*, 288 Mich App 352, 357; 792 NW2d 63 (2010). We likewise "review for clear error a trial court's factual findings related to the division of marital property." *Cunningham v Cunningham*, 289 Mich App 195, 200; 795 NW2d 826 (2010). "A finding is clearly erroneous if we are left with a definite and firm conviction that a mistake has been made." *Id.* We review de novo any associated questions of law. *Id.* In *Sparks v Sparks*, 440 Mich 141, 151-152; 485 NW2d 893 (1992), our Supreme Court described the nature of the review following assessment of a trial court's factual findings:

> The appellate court must first review the trial court's findings of fact under the clearly erroneous standard. If the findings of fact are upheld, the appellate court must decide whether the dispositive ruling was fair and equitable in light of those facts. But because we recognize that the dispositional ruling is an exercise of discretion and that appellate courts are often reluctant to reverse such rulings, we hold that the ruling should be affirmed unless the appellate court is

left with the firm conviction that the division was inequitable. [Citations omitted.]

We first address defendant's argument that the trial court erroneously categorized assets that defendant brought into the marriage as marital property. "[T]he trial court's first consideration when dividing property in divorce proceedings is the determination of marital and separate assets." *Reeves v Reeves*, 226 Mich App 490, 493-494; 575 NW2d 1 (1997). "Generally, marital property is that which is acquired or earned during the marriage, whereas separate property is that which is obtained or earned before the marriage." *Cunningham*, 289 Mich App at 201; see also *Skelly v Skelly*, 286 Mich App 578, 582; 780 NW2d 368 (2009). Typically, "the marital estate is divided between the parties, and each party takes away from the marriage that party's own separate estate with no invasion by the other party." *Reeves*, 226 Mich App at 494. However, "separate assets may lose their character as separate property and transform into marital property if they are commingled with marital assets and 'treated by the parties as marital property.' " *Cunningham*, 289 Mich App at 201 (citation omitted). While "[t]he mere fact that property may be held jointly or individually is not necessarily dispositive of whether the property is classified as separate or marital," *id.* at 201-202, the placement of separate assets into a joint marital account or their allocation to the payment of marital purchases or debts can show that a once-separate asset had become a joint asset subject to division due to commingling, *Pickering v Pickering*, 268 Mich App 1, 11-12; 706 NW2d 835 (2005).[1]

After a thorough review of the record, we conclude that it supports the trial court's determination that plaintiff and defendant put all of their assets, premarital or otherwise, toward the service of the marriage. Plaintiff testified that when she and defendant married, she sold her house, gave $300 to each of her three children out of the proceeds, and then used the remainder to finish and furnish the home defendant was building, which became their marital home. The trial court took special note of that fact. Defendant put her name on the deed to the house and all of his property around the time that they were married, and each added the other's name to his or her checking account. Plaintiff testified that all her earnings went toward household expenses, as did the periodic disbursements defendant received from annuities that he set up in 2005 by

---

[1] MCL 552.401 provides:

> The circuit court of this state may include in any decree of divorce . . . appropriate provisions awarding to a party all or a portion of the property, either real or personal, owned by his or her spouse, as appears to the court to be equitable under all the circumstances of the case, if it appears from the evidence in the case that the party contributed to the acquisition, improvement, or accumulation of the property.

"When one significantly assists in the . . . growth of a spouse's separate asset, the court may consider the contribution as having a distinct value deserving of compensation." *Reeves*, 226 Mich App at 495. We also note that any increase in value of an asset due to equity payments or appreciation that take place during a marriage is part of the marital estate. *Id.* at 496.

rolling over his employee pension or 401(k) account. The trial court accurately stated that "[w]hen the defendant retired from his employment in 1997, plaintiff continued to work and provide a steady flow of income [for the next 15 years] to meet household expenses." Plaintiff indicated that she and defendant discussed household purchases before they made them and used both checking accounts without differentiation to pay for the purchases.

Defendant's intent to share his premarital assets with plaintiff is further reflected in a trust established in 2007 in which both parties were grantors and co-trustees of a corpus comprised of all their vehicles and real property, as well as their personal effects and the contents of their marital home. The trust provided that the assets would be disbursed to the surviving partner, and after that partner died, they would be divided equally among both parties' children. Defendant argues that the trial court overlooked a provision in the trust dealing with incapacity, which showed that trust assets were to be used when necessary or advisable to pay for medical and living expenses, reflecting an intent to have the trust estate provide for the parties' needs. This argument does not undermine the trial court's ruling; rather, it actually reinforces the court's position that all of the parties' assets were marital and were to be used for their mutual benefit.

The record evidence overwhelmingly showed that the parties intended to share all of their assets and to retain nothing as separate property. Any assets that may have once constituted defendant's separate property were effectively commingled, treated by the parties as marital property, used jointly, and/or grew as a result of plaintiff's contributions. Thus, we will not disturb the trial court's finding that all of the assets at issue were marital property.[2]

Defendant also argues that the trial court erred by equally dividing the marital assets and by failing to make adequate findings with respect to various property-division factors, which would have produced a more equitable division.

The goal in distributing marital assets in a divorce proceeding is to reach an equitable distribution of property in light of the circumstances. *Berger v Berger*, 277 Mich App 700, 716-717; 747 NW2d 336 (2008). In *Sparks*, 440 Mich at 159-160, our Supreme Court recited the

---

[2] We also note that defendant's argument on this issue is cursory, undeveloped, and provides no citation whatsoever to supporting authority. In *Mudge v Macomb Co*, 458 Mich 87, 105; 580 NW2d 845 (1998), our Supreme Court stated:

"It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position. The appellant himself must first adequately prime the pump; only then does the appellate well begin to flow." [Citation omitted.]

well-established factors and principles governing the distribution of property in divorce proceedings:

> We hold that the following factors are to be considered wherever they are relevant to the circumstances of the particular case: (1) duration of the marriage, (2) contributions of the parties to the marital estate, (3) age of the parties, (4) health of the parties, (5) life status of the parties, (6) necessities and circumstances of the parties, (7) earning abilities of the parties, (8) past relations and conduct of the parties, and (9) general principles of equity. There may even be additional factors that are relevant to a particular case. . . . The determination of relevant factors will vary depending on the facts and circumstances of the case. [Citation omitted.]

The factors need not be given equal weight, consideration of a factor is unnecessary when irrelevant to the case, a court should avoid assigning disproportionate weight to any particular circumstance, and the trial court must make factual findings regarding relevant factors. *Id.* at 158-159. "The trial court need not divide the marital estate into mathematically equal portions, but any significant departure from congruence must be clearly explained." *Berger*, 277 Mich App at 717.

Defendant argues that the trial court failed to make findings regarding the contribution of each party to the estate and with respect to defendant's monthly financial needs, along with failing to properly consider fault. Our review of the record shows that the trial court did make relevant findings regarding each party's contribution to the estate. In dividing assets, the focus is on making an overall equitable distribution, not on who contributed the most in acquiring assets. *Jansen v Jansen*, 205 Mich App 169, 171; 517 NW2d 275 (1994). In the instant case, the trial court noted that defendant brought more assets to the marriage than plaintiff, but it also indicated that plaintiff contributed nearly all the money she received from the sale of her house to the marriage, as well as her earnings during the 15 years she worked. The court also considered the fact that plaintiff cared for defendant during his periods of illness. In addition, the court concluded that defendant clearly intended to put whatever assets he brought to the marriage toward the service of the marriage. We conclude that the trial court's findings with regard to the parties' relative contributions were sufficient, supported by the record, and justified an equal division of the marital estate.

With respect to financial needs, defendant argues, in particular, that the trial court should have acknowledged that it cost $8,000 a month to provide 24 hour in-home care for defendant and that such a finding compelled a division of the property more in favor of defendant. Although defendant presented evidence regarding his monthly care costs, the court also heard evidence that in-home care would continue to be available to defendant if he needed it after his resources were depleted. The trial court was clearly aware of the financial costs associated with defendant's care, and the court acknowledged that both parties had continuing needs. Speaking in the context of defendant's needs, the trial court found that the marital home, which was awarded to defendant, was fully paid off, that defendant had good health insurance coverage, that

24-hour care was being provided at a reasonable rate, and that defendant's social security benefits were roughly double the amount received by plaintiff.[3] The trial court then concluded:

> All together the assets of this marriage total well over seven hundred thousand dollars (per stipulations of the parties) which is more than enough to provide for the continuing needs of each if equitably divided. The determination of this court is that each is entitled to 50% of the assets.

The trial court's findings relative to the parties' needs, and in particular defendant's needs, were sufficient, supported by the evidence, and did not justify the incongruent division of the marital assets argued for by defendant.

Finally, we also conclude that the trial court properly considered fault. Although Michigan has a no-fault divorce law, fault may be considered in the division of assets. *McDougal v McDougal*, 451 Mich 80, 90-91; 545 NW2d 357 (1996). Fault takes into account the parties' conduct leading up to the divorce, not who left whom. *Zecchin v Zecchin*, 149 Mich App 723, 728; 386 NW2d 652 (1986). Our review of the record does not convince us that the court made a mistake in rejecting defendant's characterization of plaintiff's behavior as abuse or callous abandonment of an ailing spouse. The trial court properly appreciated the competing forces at play in this case and the normal strains of a difficult situation. The trial court did not err by declining to make the findings defendant urges on the issue of fault relative to the claims of abuse and abandonment of the marriage. Because fault was not a relevant consideration in the division of assets, the court did not err by making minimal findings.

In light of the circumstances of this case, and considering the trial court's special opportunity to judge the credibility of the witnesses who appeared before it, MCR 2.613(C), we are not left with a firm conviction that the trial court's dispositional ruling regarding the division of marital assets was unfair or inequitable.

Affirmed. Having fully prevailed on appeal, plaintiff is awarded taxable costs pursuant to MCR 7.219.

/s/ Amy Ronayne Krause
/s/ William B. Murphy
/s/ Deborah A. Servitto

---

[3] We note that the record shows that plaintiff's social security income covered her rent and utilities, but nothing more, and that she will lose her supplemental insurance because of the divorce.